## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREW MEYER DESIGNS, LLC,** | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| | : | **No. 06-1095** |
| **v.** | : | |
| | : | |
| **MOTTI HASSAN, et al.,** | : | |
| **Defendants** | : | |

### MEMORANDUM OPINION

**RUFE, J.**                                                          **August 4, 2006**

        Defendants seek to recover the cost of litigating claims twice brought and twice dismissed by this Court. For the reasons set forth below, Plaintiff shall pay the costs incurred by Defendants in litigating the second of the two suits; however, the Court will not require Plaintiff to pay Defendants' expenses relating to the first suit.

### I.       Factual Summary

        On November 23, 2005, Andrew Meyer and Andrew Meyer Designs, LLC (collectively, "Meyer")[1] filed suit in the Court of Common Pleas of Montgomery County, Pennsylvania on November 23, 2005 seeking recovery from Motti Hassan ("Hassan")[2] and DiaGroup for items purportedly seized in self-help to satisfy a debt. Defendants Hassan and DiaGroup removed the action to this Court on December 8, 2005.[3] The very next day, LLD USA, LLC

---

[1] At various stages of the litigation, Meyers has sued and been sued as Andrew Meyer, Andrew Meyer, LLC, and Andrew Meyer Designs, LLC. Peculiarly, Andrew Meyers Designs, LLC was not a legal entity at the time it filed the present action in federal court. However, as the issue of Plaintiff's legal status is not central to the question before the Court, the Court herein refers to "Meyer" to signify the Plaintiff in the current action and all its iterations.

[2] Though Defendant's actual name is Mordechai Hasson, consistent with the Court's records he will be identified herein as "Hassan".

[3] Andrew Meyer Designs, LLC v. Hassan, No. 05-6332 (E.D. Pa. removed Dec. 8, 2005) ("Designs I").

1

("LLD"), the entity to which Meyer's debt was actually owed, filed suit against Meyer in New York state court.

On December 13, 2005, Hassan and DiaGroup filed a motion to dismiss the action in this Court, arguing that Meyer failed to join or assert the Court's jurisdiction over LLD, an indispensable party to the underlying controversy.[4]  Meyer submitted no response.  The Court ordered the suit dismissed without prejudice, explaining:

> dismissal is appropriate under [Federal Rule of Civil Procedure 12(b)(7) and 19], as it appears that another party, LLD-USA, has an interest relating to the subject matter of this action and . . . that the disposition of the action in its absence might impair its right to protect its interest . . . . However, it appears that joinder of LLD-USA is not feasible, as Defendant asserts that this Court does not have personal jurisdiction over LLD-USA, a New York company doing business only in New York.  Plaintiff has put forth no evidence indicating that the Court does have jurisdiction over LLD-USA.[5]

The Court's Order further explained that dismissal was proper because Meyer had an adequate remedy in New York state and federal court, and because Meyer had failed to prosecute the action.[6]  Nonetheless, on March 14, 2006, Meyer filed a new complaint in this Court, asserting a nearly identical claim against the previously named defendants and adding LLD.[7]  Significantly, Meyer's claim in his second action mirrors one of his counter-claims in the New York action.

On May 19, 2006, Defendants moved to dismiss the second federal action.[8]  Again,

---

[4] See Designs I, Doc. #3.

[5] Designs I, Doc. #7.

[6] Id.

[7] Andrew Meyer Designs, LLC v. Hassan, No. 06-1095 (E.D. Pa. Mar. 14, 2006) ("Designs II"), Doc. #1.

[8] See Designs II, Doc. #7.

Meyer failed to respond.  But, during a Rule 16 conference held on the record on June 6, 2006 ("the June 6th Conference") Meyer's counsel expressed his willingness to withdraw the action voluntarily and to permit the claim to be adjudicated in the New York action.  Pursuant to Federal Rule of Civil Procedure 41(a)(2), the Court ordered the second action dismissed with prejudice.[9]  Because the imposition of sanctions quickly became the focus of the June 6th Conference, the Court retained jurisdiction for ninety days to resolve the issue.  Presently before the Court are Defendants' application for costs and expenses and Meyer's cross-motion for sanctions and fees.

## II.   Discussion

### A.   Assessment of Costs, Fees, and Sanctions Against Meyer

#### 1.   Costs and Fees Under Rule 41(a)(2)

When the Court orders the dismissal of an action under Federal Rule of Civil Procedure 41(a)(2), it may do so "upon such terms and conditions as the court deems proper."[10] Among the terms that the court may impose is payment of the costs and fees, including attorneys' fees, associated with litigating the action.[11]

Generally, fees and costs are not awarded when an action is dismissed without prejudice.  As another court in this District has explained, "[f]ees and costs are authorized by Rule 41 to compensate the defendant for the cost of trial preparation when defendant will not receive a final

---

[9] See Designs II, Doc. #7.

[10] Fed. R. Civ. P. 41(a)(2).

[11] Esposito v. Piatrowski, 223 F.3d 497, 501 (7th Cir. 2000); Davenport v. Gerber Prods. Co., No. 87-3198, 1989 U.S. Dist. LEXIS 14557, at * 4-5 (E.D. Pa. Dec. 5, 1989) ("The award of attorney fees, as a condition of voluntary dismissal, is not only within the authority and discretion of the court, but is also quite common."); see Puerto Rico Maritime Shipping Auth. v. Leith, 668 F.2d 46, 51 (1st Cir. 1981) ("We do not read Rule 41(a)(2) as always requiring the imposition of costs as a condition to a voluntary dismissal, although it is usually considered necessary for the protection of the defendant.  The decision of whether or not to impose costs on the plaintiff lies within the sound discretion of the district judge, as does the decision of whether to impose attorney's fees.") (citations omitted).

determination on the merits."[12]  Typically, this "same consideration is not present where dismissal is with prejudice."[13]  However, there is ample authority to suggest that a fee award is appropriate in circumstances where dismissal with prejudice is insufficient to terminate continued litigation of the same claims.[14]

The instant case is one in which the Court's dismissal with prejudice does not serve to preclude the parties from incurring the expense of litigating the same claims.  Indeed, the parties continue to litigate virtually identical claims in New York State Supreme Court today.  Accordingly, this is an exceptional circumstance where assessment of costs, including attorneys' fees, is proper as a condition of dismissal with prejudice under Rule 41(a)(2).

### 2.      Costs and Fees Under Rule 41(d)

In addition to the expenses incurred in litigating the instant action, Defendants seek payment of the costs and fees incurred defending the first federal action.  Defendants argue that Federal Rule of Civil Procedure 41(d) supports their prayer for costs and fees.  Rule 41(d) provides:

> If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

However, Defendants argument that fees should be awarded when, as in this case, the related prior

---

[12] Horizon Unlimited, Inc. v. Silva, No. 97-7430, 1999 U.S. Dist. LEXIS 13320, at *8 (E.D. Pa. Aug. 31, 1999).

[13] Id.

[14] See, e.g. Steinert v. Winn Group, Inc., 440 F.3d 1214, 1222 (10th Cir. 2006) ("if the dismissal is with prejudice, attorney fees may be imposed under Rule 41(a)(2) only in 'exceptional circumstances' [such as] . . . when a litigant makes a repeated practice of bringing claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party and the judicial system") (quotations and citation omitted).

action was involuntarily dismissed stretches the contours of the Rule beyond the plain reading of its dictate.[15]

The Third Circuit has not ruled conclusively on the subject, and this Court declines to impose such an expansive interpretation of Rule 41(d) here.  The plain wording of Rule 41(d) militates against an award of fees in this case.  Furthermore, the purpose of Rule 41(d)—"to prevent the maintenance of vexatious law suits and to secure, where such suits are shown to have been brought repetitively, payment of costs of prior instances of such vexatious conduct"[16]—would not be accomplished by imposing fees against Meyer.  Clearly, this is an instance in which a suit was brought repetitively, but it assumes too much to equate the dismissal of the first suit for failure to join a necessary party and for failure to prosecute with voluntary and pre-meditated dismissal of a suit intended only to harass.  The first federal action was, in fact, the first filed among all those related to this controversy.  Significantly, Meyer abandoned the first action only after Hassan and DiaGroup removed the case to federal court and LLD filed suit against him in the New York.  Of course, Meyer later filed a second, substantially similar suit in federal court, but the costs borne by Defendants in disposing of the second lawsuit are already accounted for in an award of fees and costs under Rule 41(a)(2).  No additional award should be necessary to prevent Meyer from pursuing his claims once more in federal court.

---

[15] Numerous federal courts have held that the syntax of Rule 41(d) precludes its application in these circumstances.  See, e.g., Duchardt v. Ewing, 571 F.2d 869, 870 (5th Cir. 1978); Loubier v. Modern Acoustics, 178 F.R.D. 17, 23 n.9 (D. Conn. 1998).  Other courts, however, have read Rule 41(d)'s grant of authority to extend beyond its plain wording.  See, e.g., Hacopian v. United States Dep't of Labor, 709 F.2d 1295, 1297 (9th Cir. 1983); Ledlow v. Red Roof Inns, Inc., No. K88-38 CA4, 1988 U.S. Dist. LEXIS 18016, at *5 (W.D. Mich. May 11, 1988); Hilgeford v. Peoples Bank, 110 F.R.D. 700, 702 (N.D. Ind. 1986); World Athletic Sports Corp. v. Pahlavi, 267 F. Supp. 160, 163 (S.D.N.Y. 1966).

[16] United Transp. Union v. Maine Central R.R. Co., 107 F.R.D. 391, 392 (D. Me. 1985).

**3.      Sanctions Under 28 U.S.C. § 1927**

Title 28, Section 1927 of the United States Code permits the Court to impose

sanctions upon an attorney for willful abuse of judicial process.  It states:

> Any attorney or other person admitted to conduct cases in
> any court of the United States or any Territory thereof who
> so multiplies the proceedings in any case unreasonably and
> vexatiously may be required by the court to satisfy
> personally the excess costs, expenses, and attorneys' fees
> reasonably incurred because of such conduct.[17]

Before the Court may order payment of attorneys' fees under section 1927, "it must find willful bad

faith on the part of the offending attorney,"[18] though it may, "in its discretion, refuse to award

attorney's fees even where it finds the existence of bad faith, if, in balancing the equities, it

nevertheless determines that an award in a particular case would not serve the interests of justice."[19]

Defendants argue that Plaintiff's duplicative and repetitive filings indicate his

attorney's intention to multiply, unreasonably and vexatiously, the proceedings before this Court.

Defendants also cite opposing counsel's delays in consenting to dismissal of the second federal

action, as well as his overall failure to put any effort into pursuing the suit while at the same time

forcing the Defendants to incur considerable expense in litigating it, as additional evidence of his

bad faith conduct.

However, Defendants ignore the fact that the Court's Order dismissing the first

federal action without prejudice did not prevent Meyer from refiling in state or federal court, nor was

---

[17] 28 U.S.C. § 1927 (2000).

[18] Williams v. Giant Eagle Markets, Inc., 883 F.2d 1184, 1191 (3d Cir. 1989); see Baker Indus., Inc. v.
Cerberus, Ltd., 764 F.2d 204, 208-9 (3d Cir. 1985) ("This bad faith requirement is seen necessary to avoid chilling
an attorney's legitimate ethical obligation to represent his client zealously").

[19] Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1986).

he precluded from re-arguing the issues relevant to its promulgation.[20]   Thus, while counsel's decision to file a nearly identical claim in federal court without addressing any of the joinder or jurisdictional concerns that doomed the first action was in no way exemplary of good professional judgment, it does not, as Defendants suggest, persuade the Court of counsel's willful abuse of process.

The fact that the second action was not altogether frivolous does not excuse the frustration and delay Meyer and his counsel imposed upon Defendants in their efforts to settle, to dismiss the suit by consent, and to obtain a reasonable extension in their allotted time to respond—allegations of which comprise the bulk of Defendants' sanctions argument.  However, in none of the testimony and correspondence that Defendants have provided to bolster their position does the Court find the strong showing of bad faith required to visit sanctions upon counsel independent of the party he represents.   In light of the restraint appropriate when exercising its authority to impose sanctions under section 1927,[21] the Court declines to impose such sanctions here.[22]

## B.   Assessment of Costs and Fees Against Defendants

Though the focus of the June 6th Conference was Meyer's sanctionable conduct, nothing in the Court's subsequent Order precludes consideration of sanctions against Defendants.

---

[20] Any issues determined by the Court in its dismissal order were neither litigated, because they were decided in the absence of any response, nor essential to the judgment of the Court, as the Court identified independent grounds for dismissal under Rule 19, Rule 41(b), and Local Rule 7.1(c).  As such, collateral estoppel would not apply.  See In re McMillan, 579 F.2d 289, 293 (3d Cir. 1978), Restatement (Second) of Judgments § 27 cmt. e, i (1982).

[21] See Baker Indus., 764 F.2d at 208-9.

[22] The Court declines Defendants' invitation to impose sanctions *sua sponte* under either Fed. R. Civ. P. 11 or its inherent equitable powers.  See Chambers v. NASCO, 501 U.S. 32, 45-46 (1991) ("[A] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons") (quotation omitted).

However, the legal assertions underlying Meyer's motion for fees and costs under Rule 11 and section 1927 are without merit.  In essence, Meyer asserts that Defendants misrepresented the Court's jurisdiction over LLD in the first action.  Consequently, Meyer argues the Court's order dismissing the action was flawed, and as such, the dismissal should be "nullified" and the action reinstated.  The costs and fees that Meyer seeks are those associated with researching and preparing his sanctions memorandum.

The Court need not delve into a lengthy analysis of Meyer's arguments pertaining to its jurisdiction over LLD.  It is sufficient to note that once the Defendants raised a jurisdictional defense in their motion to dismiss the first action, the burden was on Meyer to establish the Court's jurisdiction.[23]  Meyer had ample opportunity to present argument on this subject prior to the dismissal of either the first or second action, or in a motion for reconsideration.  Instead, Meyer chose not to respond to Defendants' motion to dismiss in the first action, to refile without asserting the Court's jurisdiction over LLD, newly named as a defendant, and to belatedly but voluntarily dismiss the second action.  Astonishingly, having missed no fewer than three opportunities to conduct a thorough review of the relevant law and present it to the Court, Meyer now faults the Defendants for failing in the same task.  Reviewing the very portion of Defendants' memorandum reproduced by Meyer in support of his motion for sanctions, the Court finds that Defendants did not misrepresent the law, nor did the Court misinterpret the law.  Rather, Defendants accurately asserted that "in order to be joined as a party, this Court must be satisfied that personal jurisdiction can be properly estblished over LLD-USA.  In this instance, there is nothing in the record to establish that the Court has personal jurisdiction over LLD-USA."[24]

---

[23] See Myers v. American Dental Assoc., 695 F.2d 716, 725 (3d Cir. 1982).

[24] Pl.'s Mem. in Support of Cross Mot. For Sanctions And Fees at 16.

Furthermore, the added relief that Meyer seeks—reinstatement of the action—is improper.  First, "[n]o provision exists in the Federal Rules of Civil Procedure for 'reinstating' previously dismissed claims."[25]  Apart from opposing dismissal in the first place, which Meyer failed to do with respect to either federal action, a plaintiff's only recourse is to move for reconsideration, appeal the dismissal to the Third Circuit, or refile the claims in federal court.  Although Meyer did refile, he failed to address the crucial jurisdictional deficiency noted by the Court in its dismissal order and soon-after abandoned the action entirely in favor of litigating in New York.  Second, the pending New York action, involving an identical claim, casts into considerable doubt the appropriateness of the Court's adjudication of that claim on its merits.[26]  Finally, in light of the candid admission made by Plaintiff's counsel that, as of June 6, 2006, Meyer had ordered him to "allow this case to die or to be dismissed or to be withdrawn or whatever would be appropriate,"[27] the Court is at a loss to find any credible basis for Meyer to pursue his claims here in the Eastern District of Pennsylvania.

### C.    Calculation of the Fee Award

Attorneys' fees comprise the bulk of the expenses for which Defendants seek recovery.  In exercising its considerable discretion in determining a fee award,[28] the Court begins by

---

[25] Rest. Teams Int'l v. Dominion Capital Fund, Ltd., No. 99-4138, 2002 U.S. Dist. LEXIS 13167, at *5 (S.D.N.Y. July 18, 2002).

[26] While "pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," IFC Interconsult, AG v. Safeguard Int'l Partners, LLC, 438 F.3d 298, 305 (3d Cir. 2006), the Court has very limited discretion to abstain from exercising its jurisdiction where "considerations of wise judicial administration, . . . conservation of judicial resources and comprehensive disposition of litigation" weigh heavily in favor of abstention.  Id. (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)).

[27] Tr. of R.16 Conf. 5 (reproduced at Defs.' Post-Hearing Mem. of Law, at Ex. 3 at 4).

[28] Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

calculating the lodestar, the presumptively reasonable fee represented by the product of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[29]  In its determination of a reasonable hourly rate, the Court looks to prevailing market rates in the relevant community.[30]  While earlier decisions of the Third Circuit define the relevant community as the community in which the firm is located,[31] it is now the clear rule in this Circuit that a reasonable hourly rate should reflect the prevailing rate in the forum of the litigation.[32]  Moreover, the burden of showing that the requested hourly rates, as well as the hours claimed, are reasonable falls to the party seeking attorneys' fees.[33]  In <u>Interfaith Community Organization v. Honeywell International, Inc.</u>, the Third Circuit explained the burden-shifting process to be employed:

> To initially satisfy this burden, the fee petitioner must submit evidence supporting the hours worked and rates claimed.  If it wishes to challenge the fee award, the opposing party must then object with sufficient specificity to the request.  Once the opposing party has objected, the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable.[34]

In comparison, the parties in this case have offered little argument on either party's fee calculation, and as a result, and the Court is now left with a meager record upon

---

[29] <u>Pennsylvania v. Del. Valley Citizens' Counsel for Clean Air</u>, 478 U.S. 546, 564-65 (1986).

[30] <u>Interfaith Cmty. Org. v. Honeywell Int'l, Inc.</u>, 426 F.3d 694, 708 (3d Cir. 2005).

[31] <u>See, e.g.</u>, <u>In re Fine Paper Antitrust Litig.</u>, 751 F.2d 562, 590 (3d Cir. 1984).

[32] <u>Interfaith Cmty.</u>, 426 F.3d at 705.  There are limited exceptions to this rule, such as when local counsel is either unwilling to handle the case or lacks the requisite expertise.  <u>Id.</u>  Defendants do not suggest that either exception should apply in this case.

[33] <u>See</u> <u>Maldonado v. Houstoun</u>, 256 F.3d 181, 187 (3d Cir. 2001); <u>Smith v. Philadelphia Hous. Auth.</u>, 107 F.3d 223, 225 (3d Cir. 1997).

[34] <u>Interfaith Cmty.</u>, 426 F.3d at 703 n.5 (quotations and citations omitted).

10

which to evaluate Defendants' request.[35]  The affidavits of their lead attorneys in this case which

Defendants introduce to support the rates they request provide an insufficient basis for comparing

these rates to those charged by attorneys of similar qualifications in the relevant forum, the

Eastern District of Pennsylvania.  Additionally, while Defendants' New York counsel has

submitted a sufficient documentation of the hours it has devoted to this case, local counsel has

provided only a final total, summarizing the activities that occurred during those hours.[36]

Additional specificity would greatly assist the court in its "thorough and searching" inquiry.[37]

       Defendants have failed to establish a prima facie case for the fee amount that they

seek, but they may remedy this deficiency by providing a more substantial documentation of the

---

[35] As represented in Exhibit 6 to the Affidavit of Robert Fryd and Exhibit C to the Affidavit of Thomas Loder, Defendants' relevant expenditures are as follows:

| Attorney | Rate | Hours Worked | Sub-Total |
|---|---|---|---|
| Robert Fryd | $480/hour | 50.5 | $24,240.00 |
| Avi Lew | $285/hour | 24.4 | $6954.00 |
| Thomas T. Loder | $375/hour | 17.7 | $6637.50 |
| | | | |
| Additional Costs | | | |
| Disbursements | | | $72.45 |
| | | | $37,903.95 |

[36] Local counsel has expressed concern that a more detailed accounting would reveal privileged information.  Firm billing records "are subject to the attorney-client privilege to the extent that they reveal litigation strategy and/or the nature of services performed," Fidelity & Deposit Co. v. McCulloch, 168 F.R.D. 516, 523 (E.D. Pa. 1996), yet counsel has already disclosed, as required when seeking fees, a general description of the services that were provided during the claimed hours.  Aff. of Thomas T. Loder, ¶8.  If counsel believes that a more specific record, ascribing hours and dates to each of the listed activities, would invade the attorney-client privilege, that information may be presented for in camera review.  See, e.g. Coastal Mart, Inc. v. Johnson Auto Repair, Inc., No. 99-3606, 2001 U.S. Dist. LEXIS 2645, at *7-13 (E.D. Pa. Mar. 14, 2001) (reviewing billing records in camera for reasonableness); Fallowfield Dev. Corp. v. Strunk, Nos. 89-8644 and 90-4431, 1993 U.S. Dist. LEXIS 6233, at *47 (E.D. Pa. May 11, 1993) (reviewing billing records in camera for the purposes of ruling on a discretionary fee adjustment).

[37] Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 362 (3d Cir. 2001) ("Contrary to the suggestion of the District Court, it is necessary that the Court 'go line, by line, by line' through the billing records supporting the fee request") (emphasis added); see Keenan v. City of Phila., 983 F.2d 459, 473 (3d Cir. 1992) (finding a cumulative total number of hours spent to be insufficiently specific, but affording the party seeking fees an opportunity to provide more detailed documentation).  But see Rode v. Dellarciprete, 892 F.2d 1177, 1190 (3d Cir. 1990) ("it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney") (quotation and citation omitted).

11

hours local counsel devoted to the second federal action, and by presenting some basis for their hourly rates which is consistent with the Third Circuit's "forum rate" rule. As such, the Court cannot yet address the reasonableness of Defendants' fee request. Had it occasion to do so, however, the absence of any challenge from Meyer would be dispositive. As the Third Circuit has noted, "[t]he court may not reduce an award sua sponte; rather, it can only do so in response to specific objections made by the opposing party."[38]

### III. Conclusion

Meyer must bear Defendants' reasonable costs incurred in defending the second action before the Court. However, at present, there is insufficient evidence in the record to sustain the imposition of fees in the amount that Defendants seek.

An appropriate Order follows.

---

[38] Interfaith Cmty., 426 F.3d at 711.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW MEYER DESIGNS, LLC,    :
    **Plaintiff**    :    **CIVIL ACTION**
    :    **No. 06-1095**
    **v.**    :
    :
MOTTI HASSAN, et al.,    :
    **Defendants**    :

## <u>ORDER</u>

**AND NOW**, this 4th day of August, upon consideration of Plaintiff's Sanctions Brief [Doc. 15], Defendants' Post-Hearing Memorandum of Law [Doc. #16], and the parties' responses thereto, it is hereby **ORDERED** as followed:

    1.  Defendant is GRANTED LEAVE to submit, within fourteen (14) days from the date of this Order, additional support for its request for fees and costs consistent with the accompanying memorandum opinion; and

    2.  Plaintiff may file its response, if any, within seven (7) days of the filing of Defendants' supplemental brief.

    It is so Ordered.

                    **BY THE COURT:**

                    <u>**/s/ Cynthia M. Rufe**</u>
                    Cynthia M. Rufe, J.